IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY A. DeWITT,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA CITIZENS REDISTRICTING COMMISSION, a California agency, ALEX PADILLA, Secretary of the State of California, and DOES 1 through 100,<br><br>Defendants. | No. C 15-05261 WHA<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## INTRODUCTION

In this action involving constitutional challenges to certain election laws, plaintiff has moved to convene a three-judge panel to review the action. Defendants have moved to dismiss. For the reasons stated below, defendants' motion to dismiss is **GRANTED** and plaintiff's motion to appoint a three-judge panel is **DENIED**.

## STATEMENT

Plaintiff Timothy A. DeWitt is an attorney representing himself in this matter. He wishes to become a candidate for California's congressional delegation by running for multiple seats in the House of Representatives (up to all fifty-three seats in California) simultaneously during the same election. He also wishes to become a candidate for the congressional seat in the 1st Congressional District of Wisconsin, currently occupied by defendant Speaker of the

House of Representatives Paul Ryan. Finally, he wishes to vote in California congressional districts other than the one in which he resides.

DeWitt contends that the very notion of single-member congressional districts, which forecloses his ability to accomplish his electoral goals, is unconstitutional, and brings claims against defendants California Citizens Redistricting Commission, and California Secretary of State, Alex Padilla. A prior order *sua sponte* dismissed all of his claims as frivolous, or as lacking sufficient allegations to establish standing. (The prior complaint also included Speaker of the House Paul Ryan and former Governor Arnold Schwarzenegger, among others, as defendants.)

That order permitted DeWitt to amend his sixth claim, which concerned claims based on the principle of "one person, one vote," viewpoint discrimination, and vote dilution. DeWitt sought leave to file an amended complaint, but the complaint included all of the dismissed claims, so leave was denied. DeWitt sought leave to file a second amended complaint, including only his sixth claim and naming only the relevant defendants. Leave was granted without prejudice to a motion to dismiss once DeWitt served them.

Defendants now move to dismiss. DeWitt moves for the convening of a three-judge panel. This is DeWitt's third suit seeking review by a three-judge panel. *See DeWitt v. Foley*, No. 92-510 (N.D. Cal.) (Judge Charles A. Legge); *DeWitt v. Wilson*, No. 93-535 (E.D. Cal.) (Judge Procter Ralph Hug, Jr.).

This order follows full briefing and oral argument.

**ANALYSIS**

Attorney DeWitt has filed a request to convene a three-judge panel to adjudicate this entire action (not just the apportionment claims) pursuant to Section 2284 of Title 28 of the United States Code. Section 2284 provides, in pertinent part:

> (a) A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

2

> (b) In any action required to be heard and determined by a district court of three judges under subsection (a) of this section, the composition and procedure of the court shall be as follows:
>
> > (1) Upon the filing of a request for three judges, the judge to whom the request is presented shall, unless he determines that three judges are not required, immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. The judges so designated, and the judge to whom the request was presented, shall serve as members of the court to hear and determine the action or proceeding.

Although a single-judge district court has limited ability to review a case calling for a three-judge panel on the merits, "[a] three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts." *Shapiro v. McManus*, 577 U.S. __, 136 S. Ct. 450, 455 (2015) (quoting *Gonzalez v. Automatic Employees Credit Union*, 419 U.S. 90, 100 (1974)). A single judge may also dismiss a complaint in which a three-judge panel is requested if it is "wholly insubstantial and frivolous." *Ibid.* "'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" *Id.* at 456.

DeWitt seeks the appointment of a three-judge panel and contends that the undersigned, acting as a single judge, lacks jurisdiction to rule on defendants' motion or to enter final judgment, citing *Shapiro*. DeWitt's sole remaining claim is premised on three distinct theories and appear to be precisely the kind contemplated in *Shapiro*, namely, those which are so clearly without merit that it would be a waste of judicial economy to require *three* judges to resolve the claim. This order addresses each theory in turn.

1. **ONE PERSON, ONE VOTE.**

DeWitt's first theory is that California's redistricting plans violate the constitutional principle of "one person, one vote" because the districts are drawn based on total population, rather than based on actual voters (Second Amd. Compl. ¶ 57). In *Evenwel v. Abbott*, 578 U.S. __, 136 S.Ct. 1120, 1126–27 (2016), the Supreme Court rejected a similar contention, holding

3

that "it is plainly permissible for jurisdictions to measure equalization by the total population of state and local legislative districts." So, too, for congressional districts. *Id.* at 1129.

In response to an order to show cause why the case should not be dismissed as frivolous in light of *Evenwel* (issued while the briefing on this motion was pending), DeWitt argued that *Evenwel* does not apply here, because the use of total population in this circumstance allegedly results in deviations of up to 490% in actual-voter totals (a number he derives by comparing the number of *actual votes cast*, rather than the number of eligible voters) (Second Amd. Compl. ¶ 58b). On the contrary, *Evenwel* affirmed the principle, in no uncertain terms, that the Fourteenth Amendment is concerned with "[n]umbers, not voters; numbers, not property . . . ." *Id.* at 1128 (quoting Cong. Globe, 39th Cong., 1st Sess., 2766–67 (1866)). Moreover, *Evenwel* rejected the argument that a jurisdiction could be required to "use multiple population baselines," that is, to equalize *both* actual population and eligible voters. *Id.* at 1133, n.15.

*Evenwel* plainly foreclosed DeWitt's first theory.

### 2. VIEWPOINT DISCRIMINATION.

DeWitt's second theory is that some districts with high proportions of actual voters are composed primarily of Republicans while those with low proportions of actual voters are composed primarily of Democrats. Thus, he alleges, California's congressional redistricting plan constituted viewpoint discrimination. It remains an open question whether political gerrymandering claims are justiciable at all. In *Vieth v. Jubelierer*, 541 U.S. 267, 315, 339, 350, 367 (2004), a majority of the Supreme Court agreed (although no majority opinion issued) that, to the extent, if at all, such claims are justiciable, intentional discrimination is a necessary element of such claims.

Far from alleging intentional discrimination, DeWitt alleges that defendants had a *duty* to consider the partisan makeup of districts (Second Amd. Compl. ¶ 12). The California Constitution *forbids* such considerations. Cal. Const., art. XXI, § 2, subd. (e) ("Districts shall not be drawn for the purpose of favoring or discriminating against an incumbent, political candidate, or political party.").

4

DeWitt's claim for viewpoint discrimination based on the theory that defendants *failed* to draw districts based on viewpoint is obviously meritless.

### 3. VOTE DILUTION.

DeWitt's final theory, vote dilution, is not subject to the requirement of a three-judge panel inasmuch as it has no relationship to apportionment. DeWitt contends that the Secretary of State inadequately investigated whether people born in the geographical United States were "subject to the jurisdiction" of the United States pursuant to the Fourteenth Amendment and thus were actually citizens upon registering them to vote (Second Amd. Compl. ¶¶ 61–62).

Section 1 of the Fourteenth Amendment states that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." In the *Slaughter-House Cases*, 83 U.S. 36, 73 (1872), the Supreme Court held that the phrase "'subject to its jurisdiction' was intended to exclude from its operation children of ministers, consuls, and citizens or subjects of foreign States born within the United States."

DeWitt offers no more than conclusory allegations that the Secretary of State failed to investigate whether individuals registering to vote were born "subject to the jurisdiction" of the United States as contemplated in the *Slaughter-House Cases* (*i.e.*, by considering whether they were children of foreign diplomats). Such conclusory allegations are not entitled to the presumption of truth on a motion to dismiss, and thus cannot support a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

DeWitt also offers no allegation of any injury he suffered as a result of the alleged failure, and thus lacks standing. He also offers no basis for finding that the current voter-registration system, which requires sworn attestations of United States citizenship, is inadequate. Nor does he provide any basis for finding that defendants had any legal duty to further investigate his concerns.

Thus, DeWitt's third theory (which would not implicate Section 2284) also warrants dismissal.

5

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is **GRANTED**. No further leave to amend may be sought due to futility. A final judgment will follow.

**IT IS SO ORDERED.**

Dated: May 31, 2016.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE